IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAUL DELGADO                              :   CIVIL ACTION
                                          :
            v.                            :
                                          :   NO.  16-1765
UNITED STATES OF  AMERICA                 :

## MEMORANDUM

**KEARNEY, J.**                                                **July 14, 2016**

Persons seeking damages arising from injuries allegedly caused by medical negligence must, within a time period set by state legislatures, file a claim defining the duty, breach, causation and injury.     Because of its unique role for service personnel, a Veterans Administration hospital must disclose any potential negligence visited upon a service member while in the hospital's care.  This policy could be frustrated if the veteran cannot recover because he should have known of the extent of negligence and party causing injury before the veterans' hospital discloses its role.  When, as here, a veteran sufficiently states a claim for negligence but there are questions of fact regarding when the veteran learned of the cause of his injuries, we must deny the hospital's motion to dismiss or for summary judgment as we cannot dismiss his claim as a matter of law based on the complaint or facts adduced before discovery.

**I. Facts**

United States Army veteran Raul Delgado sought medical care at the Philadelphia VA Medical Center ("VA") in 2010.[1]  Delgado's December 9, 2010 colonoscopy revealed a rectal mass, which VA doctors subsequently partially removed and biopsied.[2]  VA doctors diagnosed Delgado with adenocarcinoma, a malignant rectal tumor, and recommended chemotherapy and radiation therapy followed by surgical resection of the tumor.[3]

Following Delgado's completion of chemotherapy and radiation treatment, a PET-CT scan revealed a liver lesion on May 11, 2011.[4] As of July 7, 2011, according to VA doctor Keerthi Gogineni, Delgado had not yet received approval to see a surgeon at University of Pennsylvania or schedule his operation.[5]  On July 8, 2011, the VA's Douglas Levine noted Delgado urgently needed surgery since he completed his treatment, and the supervisor did not submit the requisite form necessary to schedule the surgery.[6]

On July 21, 2011, Dr. Keerthi Gogineni noted the "unacceptable" delay in the VA's approval of the appointment at University of Pennsylvania and noted the standard of care required the surgery take place within 5-10 weeks after completion of chemoradiotherapy.[7] On August 25, 2011, Dr. Keerthi Gogineni noted Delgado met with doctors at University of Pennsylvania on August 11, 2011, but because the VA had not provided his medical records, doctors could not make any further planning regarding his surgery.  Dr. Gogineni again stated the standard of care required the surgery take place 5-10 weeks after completion of chemoradiotherapy, and noted Delgado became "very upset" when he still could not schedule his surgery.[8]

The University of Pennsylvania never scheduled Delgado for surgery.  Instead, VA doctor Emily Paulson performed Delgado's surgery on September 9, 2011, but Dr. Paulson could not locate the area in question and could not complete the resection surgery.[9]  VA doctor John Lieb successfully performed the procedure four (4) days later.[10]  While still in post-op, Delgado underwent a fourth PET-CT scan revealing the cancer had metastasized to his liver.[11]  In late 2011, Delgado underwent additional chemotherapy and surgery to treat the cancer's metastasis to this liver.[12]

On May 20, 2014, the VA told Delgado of the breach in the standard of care at a "Disclosure of an Adverse Event" meeting. The VA's Chief of Staff told Delgado the delay in his diagnoses may have resulted in its progression to a later stage.[13] On July 11, 2014, Delgado's lawyer filed a Standard 95 Form, Claim for Damage, Injury, or Death with the VA Regional Counsel.[14] The U.S. Department of Veterans Affairs Office of General Counsel's investigated and concluded no VA employee acted negligently but instead followed the standard of care in providing for his care and treatment.[15]

## II. Analysis

Delgado argues the VA medical staff treated him negligently because they did not timely schedule his rectal resection surgery after he finished chemoradiotherapy and did not properly monitor his liver lesion causing it to progress into liver cancer. Delgado alleges injuries resulting from this negligence.[16] Delgado pleads he did not become aware of his injury and its cause until the May 20, 2014 Disclosure of an Adverse Event meeting. He argues both the discovery rule and the continuous treatment doctrine tolls the statute of limitations.[17]

The United States moves to dismiss arguing Delgado fails to state a claim upon which relief can be granted, fails to state a plausible claim for relief due to inadequate pleading, and because Delgado is barred by the two year limitations period applicable to tort claims against the United States. The United States also argues the VA's conduct did not actually injure Delgado, because doctors treated his rectal cancer in a timely manner and both his rectal and liver cancers have been eliminated.[18] The United States argues the chemoradiotherapy eliminated Delgado's cancer, rendering the surgery unnecessary, so no injury arose out of the delay in surgery.[19] The United States argues delay did not lead to a progression or spread of cancer and argues no injury

regarding the liver cancer because Delgado is currently free from the liver cancer.[20] The United States argues even if we find the VA injured Delgado, Delgado's claim must be dismissed because he did not file it within the two-year statute of limitations provided by the Federal Tort Claims Act.

### A. Delgado sufficiently pleads facts to survive a motion to dismiss.

The United States moves to dismiss under Rule 8(a) for inadequate pleading and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[21] The United States argues Delgado did not plead facts sufficient to indicate an entitlement to relief because he has not been injured.[22] The United States argues Delgado's injury allegations are not plausible because his medical records show the VA treated his rectal cancer in a timely manner and his rectal and liver cancers have been eliminated.[23] The United States also argues delay between the end of his chemoradiotherapy and the date of Delgado's surgery does not constitute an injury because the chemoradiotherapy eliminated the cancer, rendering the surgery unnecessary.

Delgado pleads sufficient facts "to state a claim of relief that is plausible on its face."[24] The United States does not cite medical professional authority stating the chemoradiotherapy rendered the surgery unnecessary. Asserting the delay of surgery does not constitute an injury is conclusory and unsubstantiated. Despite the United States' assertions, it is facially plausible the delay in scheduling surgery at least minimally contributed to the spread of cancer to Delgado's liver. The VA's tumor board prescribed a treatment of chemoradiotherapy followed by resection surgery and there is no indication the board ever rescinded the order for surgery.[25] VA doctor Keerthi Gogineni noted on more than one occasion the "unacceptable" delay in the VA's approval of the appointment at University of Pennsylvania, and noted the standard of care required the surgery take place within 5-10 weeks after completion of chemoradiotherapy.[26]

Based on the plead facts and attached medical records, it is facially plausible VA's failure to schedule surgery in a timely manner constitutes a breach in the standard of care, resulting in a progression and spread of his cancer.

Just because Delgado's cancers are currently eliminated does not mean the VA never caused Delgado injury. Delgado argues the delay in scheduling the surgery and the VA's failure to closely monitor his liver lesion caused the progression and spread of his cancer to his liver. Delgado also argues this progression forced him to undergo additional surgeries, tests and procedures, and increased his likelihood of cancer recurrence.[27] Delgado plead sufficient facts to establish a claim entitling him to relief.

### B. Delgado's claims are timely because he did not become aware of the cause of his injuries until the May 20, 2014 disclosure meeting.

The United States moves for summary judgment arguing Delgado's claims are untimely because he submitted his administrative claim more than two (2) years after his cause of action accrued.[28] The parties dispute when the actual injury occurred. The United States argues if an injury does exist (an issue it does not concede), it is the delay in treatment which occurred between 2011 and 2012. If this is the time of injury, the two-year statute of limitations has passed. Delgado contends the injury is in fact the breach of the standard of care which resulted in the spread and progression of his cancer, which he did not become aware of until the May 20, 2014 meeting.

The Federal Torts Claims Act ("Act") waives the United States' sovereign immunity, and we require strict adherence to its provisions.[29] A party suing under the Act must first bring a claim to the appropriate agency within two (2) years of accrual, and the agency must finally deny the claim before he can appeal to a federal court.[30] Delgado's claim accrued once he knew "both the existence and the cause of his injury, and not at a later time when he also knows that the acts

inflicting the injury may constitute medical malpractice."[31]   This is an objective standard and accrual begins when Delgado "possesses the facts which would enable a reasonable person to discover the alleged malpractice."[32] Delgado had these facts when he knew, or when "an objectively reasonable person through the exercise of reasonable diligence should have known" of the injury and its cause.[33] Under *Kubrick*, the accrual of a claim begins even if Delgado is unaware of the VA's negligent infliction of his injuries – his awareness of the facts about his injury is sufficient.[34]

Out Court of Appeals distinguishes between cases like *Kubrick*, involving the affirmative negligent treatment causing an injury and cases involving the negligent failure to treat an injury. In the latter circumstance, the discovery of both the injury and its cause may be more difficult, so the statute of limitations is tolled until the plaintiff learns of both.[35] If there are two causes of an injury, and only one is the government, the statute of limitations is tolled until the plaintiff has knowledge of the government cause.[36]

In *Kubrick*, the Supreme Court held a claim under the Act accrued once plaintiff became aware of his injury, a neomycin treatment resulting in deafness, and not at a later time, when he became aware administering the neomycin treatment constituted malpractice.[37]   Our Court of Appeals distinguishes between a plaintiff suffering from an affirmative treatment, such as a negligent administration of a drug, and a plaintiff suffering from a negligent omission or failure to provide treatment. In *Hughes,* the plaintiff underwent heart surgery, and VA medical staff gave him the drug heparin to which he had an adverse reaction resulting in the amputation of his limbs.[38] The plaintiff argued the loss of his limbs stemmed not from the VA medical staff's administration of the drug heparin, but instead from the failure of the medical staff to properly monitor and treat his negative reaction to the drug.[39] Because doctors did not inform the plaintiff

his reaction to the heparin could have been treated, "he did not know the facts surrounding the causation of his injuries until a considerable tie after his hospital discharge" when doctors did inform him of the failure to appropriately treat the reaction.[40] The court noted when the injury is the development of the problem into a more serious condition, requiring more extensive treatment, "it is only when the patient becomes aware, or through the exercise of reasonable diligence should have become aware of the development into a more serious condition" that his cause of action accrues under §2401(b).[41] The court held the statute of limitations does not begin if the plaintiff is aware of the injury, but is unaware of the act or omission which caused his injury.[42]

Similarly, in *Green*, the court again noted a person may be aware of his injury, but may not be aware of the actual cause of his injury and the statute of limitations is tolled until the injured party discovers the cause of his injury.[43] In *Green*, the plaintiff suffered hip dislocations following his hip surgery but VA doctors assured him these injuries were a normal consequence of surgery. In fact, his injuries resulted from the doctors' failure to properly treat and correct the misplacement of his hip prosthesis.[44] The court in *Green* held the statute of limitations did not accrue until Green discovered the cause of his injury, because this discovery required a specific and specialized inquiry including an orthopedic evaluation and x-ray interpretation. Because the VA doctors' negligence was not apparent, the court held Green's cause of action did not accrue until he became aware his VA orthopedist misplaced his hip prosthesis - the iatrogenic cause of his injury.[45]

Delgado may have been aware of his pre-existing injury – the rectal cancer, and its spread to his liver – but he may not have been aware of the cause of his injuries. It is not clear whether Delgado knew of the alleged iatrogenic cause of his injuries being the failure of VA staff to

schedule his resection surgery and closely monitor his liver lesion. Delgado argues he did not become aware of his injuries until May 2014 when the VA conducted its formal Disclosure of Adverse Events meeting.[46] Although VA medical staff documented these failures in his medical records following his meetings with VA medical staff, there is no pleading or evidence whether staff members informed Delgado of the breach in the standard of care mentioned in these records. Although one August 2011 record notes Delgado became upset when he realized he could not schedule surgery because the VA had not yet sent his records to University of Pennsylvania, this does not necessarily indicate Delgado's awareness of a breach in the standard of care.[47] While Delgado may have been aware of his rectal cancer, it is not clear whether VA medical staff informed him of his liver lesion, or whether he knew the delay in scheduling the surgery resulted from the VA's failure to deliver records to the University of Pennsylvania. Delgado would not have known the facts of his injury as required under *Kubrick*.

As in *Hughes* where the plaintiff argued the failure of VA medical staff to properly monitor and treat his reaction to a drug resulted in his injury, Delgado is arguing the failure of the VA medical staff to schedule his surgery in a timely manner and the failure to closely monitor his liver lesion resulted in a worsening of his condition. As our Court of Appeals stated *Hughes*, here there are two causes of Delgado's injury – his cancer and the VA's negligent treatment – and the statute of limitations is tolled until he learned of the government cause. As in *Green* where the determination of causation required a special circumstance of an orthopedic evaluation and x-ray interpretation, Delgado did not become aware until the intervening circumstance of the disclosure meeting. As in *Green*, the VA's alleged negligence were not apparent and the statute of limitations will tolled until Delgado became aware of the iatrogenic cause of his injury.

8

## C. The discovery rule raises fact questions absent admissions in the complaint.

The discovery rule tolls the statute of limitations until the complaining party "knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct."[48] The finder of fact determines when the statute should begin to run by determining whether the plaintiff acted reasonably diligent to discover his injury.[49] "The point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the … jury," unless facts of the commencement of the limitations are so clear "reasonable minds *cannot differ*," and can be determined as a matter of law.[50] The plaintiff bears the burden of demonstrating the discovery rule applies and tolls the statute of limitations, but the plaintiff is not required to plead facts sufficient to overcome an affirmative defense.[51] When the complaint does not reveal the limitations period, the statute of limitations cannot justify Rule 12 dismissal.[52]  If the complaint shows the plaintiff knew of his injury and its cause, and the complaint "clearly suggests that he did in fact have knowledge of the full scope of his injury," then the plaintiff must plead himself out of court by alleging facts to establish the affirmative defense of statute of limitations. But a plaintiff need not plead around the affirmative defense in his complaint.[53]

Reasonable minds could differ as to when the statute of limitations period began. Because Delgada does not plead when he knew of his injury and its cause during 2011 through 2012 as asserted by the United States, Delgado has not plead himself out of court.  Because Delgado does not establish the limitations period, under the *Schmidt* standard, the affirmative defense of the statute of limitations cannot justify Rule 12 dismissal.  Delgado's actions following the May 2014 disclosure meeting indicate he acted with reasonable diligence to discover his injury. Whether Delgado knew or reasonably should have known of his injury is a matter determined by

the finder of fact. There is a genuine dispute of material fact regarding when Delgado knew of his injury and its cause and when the statute of limitations began.

## III. Conclusion

We deny the United States' motion to dismiss because Delgado has sufficiently stated a plausible claim to relief. The United States' assertion of no injury is not supported by case law or by a medical professional at this stage. We deny the United States' motion to dismiss, or in the alternative, motion for summary judgment, because Delgado's claim is not barred by the two-year statute of limitations under the Act. The discovery rule is a question of fact. Mr. Delgado does not plead when the limitations period began to run and the statute of limitations cannot justify Rule 12 dismissal under *Schmidt*. A genuine dispute of material fact exists regarding both Delgado's awareness and cause of his injury and the statute of limitations.

---

[1] ECF Doc. No. 1 at ¶¶11-12.

[2] *Id.* at ¶¶13-14.

[3] *Id.* at ¶¶15-16.

[4] *Id.* at ¶¶18-20.

[5] *Id.* at ¶30.

[6] *Id.* at ¶33.

[7] *Id.* at ¶35; Ex. J, 974; Ex. K, 957.

[8] ECF Doc. No. 1 at ¶¶38-39; Ex. K, 951-952.

[9] ECF Doc. No. 1 at ¶¶42-43.

[10] *Id.* at ¶45; Ex. N, 860.

[11] ECF Doc. No. 1 at ¶44.

[12] *Id.* at ¶¶46-48.

[13] *Id.* at ¶49; Ex. O, 610.

[14] Compl. Ex. A.

[15] ECF Doc. No. 1, Ex. C.

[16] ECF Doc. No. 7 at 1.

[17] Delgado cites *Barren by Barren v. U.S.*, 839 F.2d 987, 989 n.4 (3d Cir.1988). Continuous treatment is briefly mentioned in a footnote. As we find the discovery rule tolls the statute of limitations at this stage, we defer on whether the continuous treatment doctrine would also toll the statute.

[18] ECF Doc. No. 6 at 13.

[19] *Id.* at 14.

[20] *Id.* at 15.

[21] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.,* 662 F.3d 212, 220-21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); *see also Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d. Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d. Cir. 2010).

[22] ECF Doc. No. 6 at 1.

[23] ECF Doc. No. 6 at 13.

[24] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[25] ECF Doc. No. 1 at ¶¶15-16.

[26] ECF Doc. No. 1 at ¶35; Compl. Ex. J, 974; Compl. Ex. K, 957.

[27] ECF Doc. No. 7, at 16.

[28] Summary judgment is proper when there is no genuine dispute of material fact and the movant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, the court must consider the "underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 264 (3d Cir. 2006) (citations omitted). If the movant carries its initial burden of showing the basis of its motion, the burden shifts to the non-moving party to go beyond the pleadings and point to "specific facts showing that a genuine issue exists for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). In other words, the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. US. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (citation and internal quotation marks omitted). Summary judgment must be granted against a non-moving party who fails to sufficiently "establish the existence of an essential element of its case on which it bears the burden of proof at trial." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

[29] *United States v. Kubrick*, 444 U.S. 111, 119 (1979).

[30] 28 U.S.C. §2675(a).

[31] *Kubrick*, 444 U.S. at 111-12.

[32] *Hughes v. United States*, 263 F.3d 272, 275 (3d Cir.1973) (quoting *Barren by Barren v. United States*, 839 F.2d 987, 991 (3d Cir. 1988)).

[33] *Green v. United States*, 180 F. App'x 310, 313 (3d Cir. 2006).

[34] *Kubrick*, 444 U.S. 111, 123.

[35] *Hughes,* 263 F.3d 272, 276.

[36] *Id*. at 277.

[37] *Kubrick*, 444 U.S. 111, 114.

[38] *Hughes,* 263 F.3d 272, 276.

[39] *Id*.

[40] *Id*.

[41] *Id*. at 277 (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir.1983)).

[42] *Id*. at 278; *See also Natale v. United States*, No. 13-2339, 2014 WL 1281224, at *3 (E.D. Pa. Mar. 28, 2014); *Winters v. United States*, No. 11-2692, 2012 WL 1137010, at *5 (E.D. Pa. Apr. 5, 2012).

[43] *Green*, 180 F. App'x at 313.

[44] *Id*. at 315.

[45] *Id*.

[46] ECF Doc. No. 6 at 13.

[47] ECF Doc. No. 1, Ex. K, 951-952.

[48] *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014).

[49] *Id*.

[50] *Id*.

[51] *Id*.

[52] *Id*.

[53] *Id*. at 252.