# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAUL DELGADO | CIVIL ACTION |
| v. | NO. 16–1765 |
| THE UNITED STATES OF AMERICA | |

KEARNEY, J. June 7, 2017

## MEMORANDUM

An honorably discharged Vietnam veteran losing a medical negligence case against the United States Veterans Administration, as with every party, is at risk of paying approved costs. We balance this costs mandate against demonstrated indigence of the unsuccessful party. Today, we review a formerly homeless Vietnam army veteran's request to vacate a costs judgment in excess of $10,000 when he has no assets, no bank account and survives off of subsidized rent and a disability pension arising from his military service. Personal injury counsel volunteered to represent him in a medical negligence case against the Veterans Administration arising from a reasonable delay in curing his cancer. The United States did not move for summary judgment, admitting questions of fact requiring our non-jury trial under the Federal Tort Claims Act. After trial, we entered findings of fact and conclusions of law warranting judgment for the United States. The Clerk of Court entered judgment of $10,276.18 for costs under Fed.R.Civ.P. 54(d). Upon his motion to vacate this costs judgment, we find the formerly homeless veteran demonstrates indigence and vacate this $10,276.18 costs judgment. But, he can pay some portion of the costs without being unduly burdened and under Rule 54(d), we enter judgment in the accompanying Order for costs of $600 to be paid, if practicable, in 24 monthly payments of $25.00.

## I. Facts

Among his other life experiences, Raul Delgado immigrated to the United States as a Cuban teenager and then served in the United States Army during the Vietnam War. Following his military service and with no family in the United States, he remained homeless for approximately eight years. When suffering with illness, a Homeless Advocacy Project attorney referred him to the Veterans Affairs Medical Center.[1]

In 2008, medical professionals diagnosed Mr. Delgado with diabetes mellitus, a condition associated with herbicide (Agent Orange) exposure during his service in Vietnam.[2] Veterans Affairs deemed Mr. Delgado disabled due to the diabetes mellitus and granted him a nonservice-connected pension.[3] This pension is his only income and he owns no assets of value, and does not own a bank account.[4] Over the next couple of years, medical professionals diagnosed him with several other medical conditions including a heart condition necessitating a quadruple bypass surgery, rectal cancer, liver cancer, anemia, chronic kidney disease, Post-Traumatic Stress Disorder, and Adjustment Disorder.[5] Fortunately, the VA doctors cured him of all cancer. He still believed his medical professionals did not timely diagnose his cancer illnesses which caused him undefined anxiety. As an Army veteran, he sued his Veteran Affairs' doctors alleging they breached a defined standard of care and caused him injury. Following our bench trial on Mr. Delgado's medical negligence claims, we entered judgment in favor of the United States.[6]

The United States filed a Notice of Request for Taxation of Costs[7] to which Mr. Delgado objected.[8] The United States sought costs for numerous deposition transcripts, thousands of dollars for videotape depositions (including of Mr. Delgado) and most significantly, over $3,300

for producing 4 sets of exhibits for trial.[9] On May 15, 2017, the Clerk of Court taxed costs of $10,276.18.[10]

## II. Analysis

Mr. Delgado moves to vacate the Clerk's taxation of costs because the withholding of all or a portion of his pension would potentially return him to homelessness, where his physical and mental conditions would worsen. If we grant an award, Mr. Delgado asks we reduce the amount by certain expenses not reasonably necessary for the United States' defense.[11]

Federal Rule of Civil Procedure 54(d)(1) provides "[u]nless a federal statute, these rules, or a court order provides otherwise, costs[12]–other than attorney's fees–should be allowed to the prevailing party . . . The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action." We review *de novo* the Clerk's determination of costs[13] because the Clerk's role in assessing 28 U.S.C. § 1920 costs is "essentially ministerial."[14] We "retain the discretion to assess independently the factual record, whether the record consists of new evidence or old."[15]

Rule 54(d) "creates the strong presumption that costs are to be awarded to the prevailing party."[16] Mr. Delgado bears the burden of showing an award in inequitable under the circumstances.[17] To deny costs to the prevailing party, we must "support[ ] that determination with an explanation."[18] In fulfilling our obligation to ensure a costs award is not "inequitable," we should consider evidence completing the factual record or shedding light on the inequities in the case.[19] We may expand the evidentiary record to fulfill this obligation.[20] Our court of appeals cautions our discretion "because the denial of such costs is akin to a penalty."[21]

The equitable factors for reviewing a costs award include: "(1) the prevailing party's unclean hands, bad faith, dilatory tactics, or failures to comply with process during the course of

3

the instant litigation or the costs award proceedings; and (2) each of the losing parties' potential indigency or inability to pay the full measure of a costs award levied against them."[22] "The most important of these factors is the losing party's indigency or inability to pay "the full measure" of a costs award against it."[23] We may not consider the "complexity or closeness of the underlying issues," "the losing parties' good faith," or "the relative disparities in wealth between the parties."[24]

### A. Mr. Delgado demonstrates indigence requiring we reduce the costs judgment.

Mr. Delgado asks we vacate the Clerk's taxation of all costs because he is indigent and unable to pay costs.[25] We may exempt Mr. Delgado from costs after finding, based on evidence he adduced, he is in fact indigent, and if we find equity supports the reduction of costs award imposed.[26] In assessing indigence, we must measure Mr. Delgado's ability to pay in comparison with whatever award we decide to tax against him.[27] There are no "hard and fast" rules for assessing indigence; we should use our "common sense."[28]

Mr. Delgado submitted a declaration in support of his indigency.[29] Mr. Delgado was homeless for approximately 8 years with no family in the United States.[30] In 2008, Veterans Affairs deemed Mr. Delgado disabled due to diabetes mellitus and granted him a nonservice-connected pension after accounting for his disability, age, education, and occupational background.[31] Mr. Delgado receives $1,072 per month.[32] A U.S. Department of Housing and Urban Development program for veterans, Housing and Urban Development-Veterans Affairs Supportive Housing (HUD-VASH), enables Mr. Delgado to obtain housing.[33] Mr. Delgado pays $166 of his $744 monthly rent and the HUD-VASH program pays the remainder.[34] Mr. Delgado also pays his monthly electric bill.[35] He owns no assets of value, nor does he have a bank account.[36]

We may vacate or reduce costs based upon the losing party's inability to pay when the party demonstrated he owns no assets, earns little or no income, and lives with relatives.[37] In *Yudenko v. Guarinni*, the losing party lived with his parents and paid no rent.[38] He earned no income because a disability rendered him unable to walk or stand for a significant period of time.[39] The court reviewed the losing party's indigence, disability, and $20,000 in debt owed to the Lancaster County Court of Common Pleas, and concluded taxing costs would be punitive because the losing party had attempted to vindicate his rights in a Section 1983 action.[40] The court vacated the $3,576.37 of costs entirely.[41]

In *Sullivan v. Warminster Twp.*, the losing party swore an affidavit attesting to flashbacks of her son's death, depression, difficulty sleeping and concentrating, panic attacks, and PTSD.[42] Her PTSD diagnosis precluded employment.[43] She did not own a bank account, lived with her niece free of charge and received $360 per month through a food stamp and cash assistance program.[44] The court did not impose costs because she owned no bank account, survived off government assistance and charity from her family.[45] "To force Ms. Sullivan to pay costs in this matter 'would be unduly burdensome' both financially and emotionally."[46]

Where a losing party fails to offer evidence of his inability to pay at least a portion of the costs assessed by the Clerk, or offer evidence to support his assertion he spent the money he received from family on medical care or other "necessities," the district court reduced costs rather than vacating in full.[47] Proceeding *in forma pauperis,* the losing prisoner maintained a positive balance in his inmate trust account because family and friends sent gifts.[48] The state paid for his basic food and medical care.[49] The court viewed his expenditures, consisting almost entirely of items from the prison commissary, as discretionary.[50] Nor did the losing prisoner explain why he could not work and earn income while incarcerated.[51] "After considering the

5

totality of the circumstances," the court required the losing party to pay two-thirds of the total costs sought by the defendants as a matter of equity.[52]

Distinct from the district court's indigence findings in *Yudenko* and *Sullivan*, the court found in *Mazzarella* it "need not find a losing party indigent to reduce or vacate a taxation of costs."[53] In *Mazzarella*, a case with three losing parties, the court vacated the costs entirely of one losing party who earned $195 per month and owned no assets.[54] Of the remaining two, one losing party earned $37,206 annually and the other $24,994.[55] Both had vehicles available for their use.[56] The court reduced the remaining losing parties' costs from $8,811.53 to $3,000, jointly and severally, compelled by their lack of assets, "relatively low-income jobs" and one losing party's dependent child.[57]

Mr. Delgado argues his situation is more critical than the taxed parties in *Sullivan* and *Mazzarella*.[58] He is unemployed and fully disabled.[59] He has no bank account or assets. Unlike parties in *Yudenko*, *Sullivan*, and *Mazzarella*, Mr. Delgado has no family in the United States to assist him physically or financially.[60] Veterans Affairs' medical professionals attributed his disability-causing diabetes to his military service.[61] An elderly veteran, Mr. Delgado suffers mental and psychological conditions common to Vietnam theater veterans alongside multiple serious medical conditions.[62] He claims an award of costs would likely return him to homelessness like many Vietnam veterans with PTSD.[63] After paying his portion of the rent and his utilities, Mr. Delgado retains approximately $800 per month. He claims his pension provides barely enough money for him to pay rent, utilities, food, and transportation to and from his medical appointments. Mr. Delgado also argues his HUD-VASH rent subsidy may be cut, relying on selected news articles.[64] We find this slashing of his rent subsidy argument is too speculative.

The United States argues because Mr. Delgado's counsel presumably advised him he would be responsible for costs if he lost the case and chose to proceed, he ought to cover the costs entirely. Denying it costs would amount to an undeserved penalty.

We disagree with the United States. The indigence factor is "founded on the egalitarian concept of providing relatively easy access to the courts to all citizens and reducing the threat of liability for litigation expenses as an obstacle to the commencement of a lawsuit or the assertion of a defense that might have some merit."[65]

We find Mr. Delgado introduced sufficient evidence he is indigent and unable to pay the large costs award.[66] He receives a monthly pension which he uses to pay his electric bill and portion of the rent. Yet the full costs imposed, $10,276.18, exceed his annual income after accounting for his monthly rent and electric bill payments. Mr. Delgado's disability precludes employment. Even on a payment schedule for this amount, he would suffer great financial harm and this judgment is unduly burdensome.

**B. Mr. Delgado can pay limited costs including on a payment plan.**

As Mr. Delgado provided no evidence of the cost of his necessities aside from his electric bill, we decline to vacate the costs in full. Because of Mr. Delgado's indigence, we conclude, as a matter of equity, the costs award should be reduced.

Mr. Delgado, and every litigant, must be advised of some risks of paying costs. While he is unable to pay the full amount of the costs, he has not persuaded us of an inability to pay $600 to the United States in 24 equal monthly payments of $25.00. We have no basis to find this reduced judgment with a fair monthly payment based on his pension is overly burdensome.

## III. Conclusion

Mr. Delgado established his indigence requires we largely vacate the costs judgment against him but he has not shown he cannot pay $25.00 a month for 24 months to satisfy a reduced $600 judgment as reflected in the accompanying Order.

---

[1] *Id.* at p. 2.

[2] *Id.* at ¶ 5.

[3] *Id.*

[4] *Id.* at ¶ 8.

[5] *Id.* at ¶ 6.

[6] ECF Doc. No. 47.

[7] ECF Doc. No. 49.

[8] ECF Doc. No. 50.

[9] Our Policies require the Plaintiff to produce one set of exhibits for the Court and witness. Experienced counsel typically produces these exhibits electronically so as to reduce costs. The United States, for unknown reasons, decided to photocopy 4 sets of 8315 pages of exhibits.

[10] The Clerk of Court allowed all requested costs except for $88.00 for binders. (ECF Doc. No. at 9–10).

[11] He specifically objects to medical record copying expenses, claiming 2,827 pages were duplicated and copied for no reason. Mr. Delgado proposes reducing copying expenses by $1,130. He also objects to $524.10 and $616.40 in videotaping fees for depositions.

[12] "A judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily

8

obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree."

[13] *See Farmer v. Arabian Am Oil Co.*, 379 U.S. 227, 233, (1964) (*de novo* review of new evidence weighing in favor of reducing the costs award.)

[14] *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000).

[15] *Id.* at 462.

[16] *Id.*

[17] *Id.* at 462-463. *See also* 10 MOORE'S FEDERAL PRACTICE, § 54.101, at 54–151 & n. 7 (collecting cases).

[18] *Id.* (quotation omitted).

[19] *Id.* (quoting *Friedman v. Ganassi*, 853 F.2d 207, 211 (3d Cir.1988)).

[20] *Id.* at 462.

[21] *Regers v. The Nemours Foundation, Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (quotation omitted).

[22] *In re Paoli*, 221 F.3d at 463.

[23] *Id.* (quoting *Smith v. Southeastern Pa. Transp. Auth.*, 47 F.3d 97, 99 (3d Cir. 1995) (per curiam)).

[24] *Id.* at 468.

[25] ECF Doc. No. 54.

[26] *In re Paoli*, 221 F.3d at 464.

[27] *Id.* at 464 n. 5.

[28] *Id.*

[29] ECF Doc. No. 54, Ex. A.

[30] *Id.*, Ex. B.

[31] *Id.*

[32] *Id.*

[33] ECF Doc. No. 54 at Ex. A, ¶ 8.

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *See Mazzarella v. Brady*, No. 14-5654, 2016 WL 7231894 (E.D.Pa., Dec. 14, 2016) (vacating costs against one defendant entirely and reducing costs jointly and severally to remaining two defendants.); *Sullivan v. Warminster Twp*, No. 07-4447, 2013 WL 1934532 (E.D.Pa., May 9, 2013); *Yudenko v. Guarinni*, No. 06-4161, 2010 WL 2490679 (E.D.Pa., June 15, 2010) (vacating all costs).

[38] *Yudenko*, 2010 WL 2490679 at *4.

[39] *Id.*

[40] *Id.* at 5.

[41] *Id.*

[42] *Sullivan*, 2013 WL 1934532 at *3.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* (quotation omitted).

[47] *Wesley v. Dombrowski*, No. 03-4137, 2008 WL 2609720, * 5 (E.D. Pa. June 26, 2008).

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Mazzarella*, 2016 WL 7231894 at *7(quoting *In re Paoli*, 221 F.3d at 464).

[54] *Id.* at 8.

[55] *Id.* at 5.

[56] *Id* at 7.

[57] *Id* at 8.

[58] ECF Doc. No. 54, at p.8.

[59] *Id.*, Ex. A ¶¶ 5, 7.

[60] *Id.* at p.8.

[61] *Id.*

[62] *Id.*

[63] *Id.*, Ex. B.

[64] ECF Doc. No. 54, Ex. D.

[65] *In re Paoli*, 221 F.3d at 462 (quotation omitted).

[66] *Id* at 464.